IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT R. MCKAY, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 08 C 5467 |
| | ) | |
| OFFICE OF THE ILLINOIS | ) | |
| STATE FIRE MARSHAL and | ) | |
| DAVID FOREMAN, in his official | ) | |
| and individual capacity, | ) | |
| | ) | |
|     Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

Plaintiff Robert R. McKay ("McKay"), an African American, filed this lawsuit alleging race discrimination against the Office of the Illinois State Fire Marshal ("OSFM") and David Foreman ("Foreman"), individually, and in his official capacity as Illinois State Fire Marshal, under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000 *et seq.*), 42 U.S.C. § 1981, and 42 U.S.C. § 1983. Currently, before the court is OSFM and Foreman's Motion for Summary Judgment [28], which is presented jointly by the defendants and asserts that McKay cannot establish a prima facie case for any of his claims based on the evidence in the record. For the reasons stated below, the defendants' motion for summary judgment is granted.

BACKGROUND

Illinois state agencies may fill vacant employment positions in several ways including promotion of a certified employee, reinstatement of a former certified employee, and appointment from the Open Competitive Eligible List of candidates maintained by Illinois's

1

Department of Central Management Services ("CMS").  (Defs.' Stmt. Undisputed Facts ¶ 29.) State agencies can only contact applicants who are not current or former certified state employees through the Open Competitive Eligible List.  (*Id.* ¶ 41.)

The Open Competitive Eligible List is compiled of prospective employees who submitted an application to CMS and received a letter grade within a certain job classification.  (*Id.* ¶¶ 32–33.)  After CMS receives an application, an assessment analyst reviews and evaluates it against established criteria to determine the applicant's level of qualifications.  (*Id.* ¶ 35.)  Based on that evaluation, CMS assigns the applicant a letter grade, which is then mailed to the applicant.  (*Id.* ¶¶ 35-36.)  After the notice of the grade has been mailed, CMS takes no further actions until a state agency requests the Open Competitive Eligible List.  (*Id.* ¶ 36.)

In 2007, OSFM created the position of Northern Region Arson Division Manager, PSA, Opt. 1 ("Northern Division Manager") to assist OSFM's Director of Arson Investigations Division, Richard Crum ("Crum").  (Defs.' Stmt. Undisputed Facts ¶ 28.)  Among his duties as Division Director, Crum supervised clerical, supervisory, and investigative field staff, and he was responsible for the day-to-day operations of the division.  (*Id.* ¶ 5.)

Stephanie Kirk ("Kirk") served as the Public Service Administrator, Human Resource Manager for OSMF.  (Defs.' Stmt. Undisputed Facts ¶ 4.)  Kirk was responsible for writing and reviewing job descriptions (*id.*), including the job description posting for the Northern Division Manager position (*id.* ¶ 37).

McKay submitted his application for the Northern Division Manager position to the CMS office in Chicago in April 2007.  (Pl.'s Stmt. Additional Facts ¶ 27.)  He did not submit an application directly to OSFM (Pl.'s Res. Defs.' Stmt. Undisputed Facts ¶ 64), and OSFM never

2

requested the Open Competitive Eligible List from CMS for the Northern Division Manager position (Pl.'s Res. Defs.' Stmt. Undisputed Facts ¶ 67).

Crum and Kirk, along with Dave DeFraties ("DeFraties"), Foreman's Chief of Staff (*id.* ¶ 35), reviewed the applications submitted to OSFM (Pl.'s Res. Defs.' Stmt. Undisputed Facts ¶ 45; *id.* at Ex. D at 14–15), and Crum and Kirk determined which applicants were qualified for an interview (Pl.'s Stmt. Additional Facts ¶ 42). Kirk and Crum never saw McKay's application while they were reviewing applications for the Northern Division Manager position. (Defs.' Stmt. Undisputed Facts ¶¶ 71–72.)

Kirk and Crum determined that two applicants, Luke Hartigan ("Hartigan"), a former certified state employee (*id.* ¶ 54), and Steven Sullivan ("Sullivan"), qualified for an interview (*id.* ¶ 45). Sullivan declined the opportunity to interview, but Hartigan accepted and was interviewed on May 24, 2007. (*Id.* ¶ 46.) Crum and Kenneth Wood ("Wood"), Division Manager of Technical Services (*id.* ¶ 6), conducted Hartigan's interview (*id.* ¶ 47). Although Wood was not involved in reviewing the applications (Pl.'s Res. Defs.' Stmt. Undisputed Facts ¶ 45), Crum asked him to participate in the interview because Wood was a "RUTAN certified interviewer,"[1] and Wood worked in the Chicago office where Hartigan's interview was held (*id.* ¶ 47). Wood took notes during the interview and provided scores for Hartigan on a scoring sheet. (*Id.* ¶ 48.) Overall, Wood and Crum were impressed with Hartigan's interview (*id.* ¶¶ 49–50), and Crum recommended that Hartigan be hired for the Northern Division Manager position (*id.* ¶ 53). Foreman approved the selection of Hartigan for the Northern Division Manager position as a "formality." (Defs.' Stmt. Undisputed Facts ¶ 74; *id.* at Ex. F at 9.)

---

[1] *See Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990).

3

Because an Illinois state agency must receive qualification approval from CMS before it can hire a current or former state employee (*id.* ¶ 56), OSFM sent CMS a "CMS 96-pre-qual form" seeking qualification approval for Hartigan for the Northern Division Manager position (*id.* ¶ 61). CMS ultimately approved Hartigans's qualifications (*id.* ¶ 62), and Hartigan began working for OSFM on July 1, 2007 (*id.* ¶ 63).

As stated earlier, McKay, an African American, filed this lawsuit against defendants OSFM and Foreman alleging that he was not hired for the Northern Division Manager position due to his race. (Am. Cmplt. ¶¶ 9–18.) McKay has asserted three claims: 1) a race discrimination claim under Title VII against OSFM; 2) a § 1981 discrimination claim against Foreman; and 3) a § 1983 claim alleging a violation of his equal protection under the Fourteenth Amendment against Foreman.

## LEGAL STANDARD

Summary judgment can be granted only when the record shows "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, this court must consider the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Woodruff v. Mason*, 542 F.3d 545, 550 (7th Cir. 2008). Once a properly supported motion for summary judgment is made, the nonmoving party cannot rest on its pleadings but must affirmatively demonstrate by specific factual evidence that there is a genuine issue of material fact requiring trial. *Celotex*, 477 U.S. at 324; *Keri v. Bd. of Tr. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). Conclusory allegations, "if not supported by the record, will not preclude summary judgment."

4

*Keri*, 458 F.3d at 628 (citing *Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir. 1997)).  The failure to prove an essential element of the nonmoving party's case renders all other facts immaterial.  *Celotex*, 477 U.S. at 322–23.

## ANALYSIS

In their summary judgment motion, OSFM and Foreman argue that McKay cannot establish the elements of his claims because OSFM never received McKay's application and even if it had, OSFM only considered present and former state employees for the position.  In the alternative, assuming McKay can establish a prima facie case, OSFM and Foreman contend that they had a legitimate, non-pretextual, and non-discriminatory reason for their actions—namely, McKay was not a present or former state employee.

**I.  McKay's Statement of Additional Facts Beyond the Number Allowed by L.R. 56.1(b)(3)(c)**

As an initial matter, OSFM and Foreman have asked the court to strike paragraphs forty-one through forty-three of McKay's Statement of Additional Facts for non-compliance with Local Rule 56.1(b)(3)(c).  Under Local Rule 56.1(b)(3)(c), "[a]bsent prior leave of the Court, a respondent to a summary judgment motion shall not file more than 40 separately-numbered statements of additional facts."  L.R. 56.1(b)(3)(c).  The district court has discretion in determining whether to strictly apply or overlook transgressions of local rules, including Local Rule 56.1.  *See Trade Finance Partners, L.L.C. v. AAR Corp.*, 573 F.3d 401, 409 (7th Cir. 2009) (quoting *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 987 (7th Cir. 2001) ("[T]he district court has the discretion to enforce [Local Rule 56.1] strictly or somewhat leniently.")).  In this instance, the court finds that permitting McKay's statement of the additional facts is not

prejudicial to OSFM and Foreman. Therefore, OSFM and Foreman's request to strike the contested three paragraphs of McKay's Statement of Additional Facts is denied.

## II. McKay's Title VII Race Discrimination Claim

Title VII renders it unlawful "for an employer . . . to fail or refuse to hire or discharge any individual . . . because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Claims brought under this statute can be proven through the direct or indirect method. *See Bio v. Fed. Express Corp.*, 424 F.3d 594, 596 (7th Cir. 2005). Here, McKay seeks to prove his claims of race discrimination through the indirect method established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 402 (1973).

The indirect method involves a three part, burden shifting inquiry. *McDonnell Douglas*, 411 U.S. at 802; *Brummett v. Sinclair Broad. Group, Inc.*, 414 F.3d 586, 692 (7th Cir. 2005). To establish a prima facie case of failure to hire due to race discrimination under the indirect method, a plaintiff must show that "(1) [he] was a member of a statutorily protected class; (2) [he] applied for, and was qualified for, an open position; (3) the employer rejected [him] from the position; and (4) the employer filled the position with an individual outside of the plaintiff's protected class, or the position remained vacant." *Koszola v. Bd. of Educ. of City of Chicago*, 385 F.3d 1104, 1110 (7th Cir. 2004). If the plaintiff establishes a prima facie case, the burden shifts to the employer to provide a "legitimate, non-discriminatory reason" for its action. *Id.* If the employer satisfies its burden, the burden shifts back to the employee to show that the employer's proffered "legitimate non-discriminatory reason" for termination is pre-textual. *Id.*

6

According to OSFM and Foreman, McKay cannot prove his Title VII claim because OSFM never received McKay's application. McKay, however, has presented evidence that OSFM produced during discovery in this dispute the very same application that OSFM denies receiving from McKay. Because the court must draw all reasonable inferences in favor of McKay, it will assume, without deciding, that OSFM received the application before filling the Northern Division Manger position.

Nevertheless, the court finds that summary judgment is appropriate because McKay has failed to prove that any of the OSFM employees responsible for selecting the candidates for the Northern Division Manager position ever received or knew about McKay's application. *See Trevor Bright v. G.B. Bioscience, Inc.*, No. 07-20906, 305 Fed. Appx. 197, at *6 (5th Cir. Dec. 15, 2008) (granting summary judgment based in part on the finding that the plaintiff did not directly controvert testimony from the defendant's human resource director that she did not receive the plaintiff's resume or application). Consequently, McKay cannot establish a prima facie case under the indirect method because he has not produced any evidence that OSFM "rejected" him.

As discussed above, Crum, Kirk, and DeFraties reviewed the applications for the position of Northern Division Manager. Only Crum and Kirk, however, ultimately determined which applicants met the job description and would be successful candidates for the Northern Division Manager position. (Pl.'s Stmt. Additional Facts ¶ 42.) According to their uncontradicted testimony, neither Kirk nor Crum ever saw McKay's application. (Defs.' Stmt. Undisputed Facts ¶ 71–72.) Crum also testified that he had no knowledge that McKay even applied for the position. (Defs.' Stmt. Undisputed Facts ¶ 72; *id.* at Ex. D at

7

74.) McKay has not disputed this testimony, nor has he presented any evidence to support the inference that Kirk was aware that McKay had applied for the position. Additionally, although Foreman had the final approval for all hiring within OSFM, McKay does not dispute that Foreman was not responsible for selecting the possible candidates for the Northern Division Manager position. (Pl.'s Stmt. Additional Facts ¶ 42.) Moreover, the record similarly contains no evidence that Foreman was ever aware of McKay's application. McKay, therefore, cannot prove that the OSFM employees responsible for selecting candidates for the Northern Division Manager position actually "rejected" him.

As a result, McKay has failed to establish a prima facie case of Title VII discrimination, and the court need not address OSFM's additional argument that it had a "legitimate non-discriminatory reason" for not hiring McKay. OSFM and Foreman's motion for summary judgment as to McKay's Title VII claim is granted.

**II. McKay's Section 1981 and 1983 Claims**

McKay additionally alleges that Foreman discriminated against him in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 1983. The standards for establishing a prima facie case for discrimination under §§ 1981 and 1983 are identical to the standard for establishing claims under Title VII. *See Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 338 (7th Cir. 2002) (noting the similar analysis of Title VII and § 1981 claims); *Williams v. Seniff*, 342 F.3d 774, 788 n.13 (7th Cir. 2003) (noting that the same standards apply to Title VII and § 1983 equal protection claims). As discussed above, McKay has failed to prove that his application for the Northern Division Manager position was "rejected." Moreover, McKay has not provided any evidence that Foreman ever saw McKay's application or that Foreman was ever aware that

8

McKay had applied for the Northern Division Manager position before that position was filled. The court, therefore, also grants OSFM and Foreman's motion for summary judgment as to McKay's §§ 1981 and 1983 claims.

## **CONCLUSION**

For the foregoing reasons, OSFM and Foreman's Motion for Summary Judgment [28] is granted. Judgment is entered in favor of defendants, Office of the State Fire Marshal and David Foreman, individually, and in his capacity as Illinois State Fire Marshal. This case is terminated.

ENTERED:

*James F. Holderman*

James F. Holderman
Chief Judge

Dated: October 6, 2009